# APPENDIX C

**Contains Information Subject to Requested Protective Order**



**DEPARTMENT OF THE NAVY**
NAVAL SEA SYSTEMS COMMAND
1333 ISAAC HULL AVE SE
WASHINGTON NAVY YARD DC 20376-0001

IN REPLY REFER TO
4200
SER 02/052
08 JUL 2025

HII SHIPCYCLE, LLC
Attn: ███████
11815 Fountain Way, Suite 500
Newport News, VA 23606

SUBJ: DENIAL OF AGENCY PROTEST OF HII SHIPCYCLE, LLC UNDER SOLICITATION N00024-25-R-4135

Ref:

(a) Solicitation N00024-25-R-4135 and all amendments
(b) Agency Protest of HII ShipCycle, LLC, dated Dec. 27, 2025
(c) GAO Protest of HII ShipCycle, LLC, dated Jan. 6, 2025
(d) B-423265.1 Navy Request for Dismissal
(e) Ser 0241/037 Ex-Enterprise Dismantlement and Disposal, Solicitation N00024-25-R-4135, Discussions Opened dated Apr. 2, 2025
(f) Ser 0241/053 Ex-Enterprise Dismantlement and Disposal, Solicitation N00024-25-R-4135, Discussions Closed dated Apr. 16, 2025
(g) HII Email dated Apr. 23, 2025
(h) Brown Rudnick LLP Letter dated 24 Apr. 2025, Re: Navy Solicitation N00024-25-R-4135, Potential protest of offeror HII ShipCycle, LLC
(i) Brown Rudnick LLP Supplemental Explanation with Exhibits dated May 4, 2025
(j) Ser 0241/072 LATE RECEIPT OF HII SHIPCYCLE PROPOSAL FOR EX-ENTERPRISE DISMANTLEMENT AND DISPOSAL UNDER SOLICITATION N00024-25-R-4135 dated May 30, 2025
(k) Agency Protest of HII ShipCycle, LLC, dated Jun 9, 2025
(l) Ser 0241/087 Postaward Enhanced Debriefing Response Under Solicitation N00024-25-R-4135, Ex-Enterprise (CVN-65) Dismantlement and Disposal dated Jun. 18, 2025

███████,

In accordance with Federal Acquisition Regulation (FAR) 33.103, the Department of the Navy, Naval Sea Systems Command ("NAVSEA" or "the Navy") provides this decision in response to the agency-level protest submitted by HII ShipCycle, LLC ("ShipCycle") on June 9, 2025. After careful review, NAVSEA denies ShipCycle's agency-level protest in its entirety for the reasons discussed below.

I.  Background

ShipCycle protests the Navy's elimination of ShipCycle from the competition under reference (a) and the Navy's decision that other offerors for the dismantlement and disposal of the USS ex-Enterprise (ex-CVN 65), the U.S. Navy's first nuclear-powered aircraft carrier, proposed reasonable prices. The primary objective of this procurement is to dispose of the ex-CVN 65 safely and efficiently, ensuring full compliance with Federal, State, and local laws and regulations, while also securing competitive pricing for the project and achieve fair and reasonableness to the Government.

The Navy released the Solicitation on October 1, 2024. Ref. (a). The Solicitation notified offerors that the Procurement Integrated Enterprise Environment (PIEE) website "is the only acceptable method of submission," and that "[t]imely submission to PIEE does not constitute complete submission. As such, Offerors are strongly encouraged to submit early to allow time to confirm receipt of the proposal materials with the [Procuring Contracting Officer] or [Contract Specialist]." Ref. (a). The Solicitation set the deadline for initial proposals as January 6, 2025. *Id.* On December 27, 2024, ShipCycle submitted an agency-level protest to the Contracting Officer challenging the terms of the Solicitation, and, subsequently, a protest to the Government Accountability Office (GAO), on January 6, 2025. *See,* refs. (b) and (c). ShipCycle challenged numerous Solicitation terms,

SUBJ: DENIAL OF AGENCY PROTEST OF HII SHIPCYCLE, LLC UNDER SOLICITATION
N00024-25-R-4135

including the Navy's notice of its intention to award a contract based on offerors' initial proposals, and requested an extension of the proposal due date. The Navy considered ShipCycle's concerns, and, in response, committed to engage in discussions, amended the Solicitation, and allowed for additional time for submission of initial proposals. Ref (d).

    On April 2, 2025, the Navy opened discussions and issued Amendment A0004 to the Solicitation. Ref. (a). The Contracting Officer provided a list of questions tailored to the offerors' proposals, and noted all findings of risk. Ref. (e). On April 16, 2025, the Contracting Officer issued letters to all three offerors in the competitive range, closing discussions and requesting Final Proposal Revisions (FPRs) with a due date of April 23, 2025, at 3:00 pm local time, Washington, D.C. Ref. (f). All offerors in the competitive range submitted timely FPRs, except ShipCycle. ShipCycle requested another extension of the proposal submission deadline. Ref. (g). The Contracting Officer experienced the following sequence of events with respect to ShipCycle's FPR submission:

- On April 23, 2025, at 2:14 pm local time, ▓▓▓▓▓▓▓ of ShipCycle emailed the Contracting Officer: "[w]e are having difficulty saving our FPR files to PIEE. Do you know of any issues with the system?"
- At 2:18 pm, the Contracting Officer replied: "[j]ust logging in now I had some issues with the landing page of the Solicitation module, but they were cleared up when I refreshed the page. Is there a specific error message you are receiving?"
- At 2:19 pm, ▓▓▓▓▓▓▓ responded, "[i]t's just spinning."
- At 2:27 pm, ▓▓▓▓▓▓▓ responded to the Contracting Officer's request for specific error messages, "I am trying to save each file individually now but it is really slow. I don't see how they will all be saved by 3pm and need an extension."
- At 2:45 pm, ▓▓▓▓▓▓▓ emailed a screenshot of an error message that stated, "[y]our connection was interrupted[.] A network change was detected. ERR_NETWORK_CHANGED[.]"
- At 2:52 pm, the Contracting Officer received notification from PIEE that an offer was submitted by ▓▓▓▓▓▓▓ for ShipCycle.
- At 2:57 pm, ▓▓▓▓▓▓▓ called the Contracting Officer and informed him the offer submitted was not complete and only contained the files ShipCycle was able to upload at that time. The Contracting Officer confirmed receipt of the 2:52 pm submission notification.
- At 3:06 pm, the Contracting Officer received a voicemail from ▓▓▓▓▓▓▓, describing an error that stated, "offer identifier already exists for the selected CAGE code."
- At 3:32 pm, the Contracting Officer called ▓▓▓▓▓▓▓ to confirm receipt of the partial submission and stated that the system should allow for late submissions, but that the Navy had not determined whether or not it would take a late proposal into consideration for award.
- At 4:47 pm, ▓▓▓▓▓▓▓ emailed the Contracting Officer describing continued difficulty and requesting he reopen the solicitation, suggesting that the issue may be due to the fact that the solicitation was closed in PIEE.
- At 5:06 pm, the Contracting Officer responded stating, "I'm not able to see what you see on your end but you should be able to submit an offer even though the solicitation is closed."
- At 5:23 pm, ▓▓▓▓▓▓▓ emailed the Contracting Officer: "[w]e are unable to submit in PIEE. We are willing to bring a thumb drive if you can accept it. We need an extension due to problems we are having with the Government system. We will continue to attempt a file load this evening. Is there any other format we can provide other than through PIEE? Where can we bring the thumb drive tonight or first thing in the morning?"
- At 5:33 pm, ▓▓▓▓▓▓▓ left a voicemail with the Contracting Officer describing ShipCycle's difficulties, stating that it had informed its CEO of the issues, and restating the offer to deliver a thumb drive.
- At 6:26 pm, ▓▓▓▓▓▓▓ attempted to email the Contracting Officer the FPR "piece meal." Only one email was submitted, and it included the same attachments that were already received in ShipCycle's 2:52 pm partial submission through PIEE. ▓▓▓▓▓▓▓ email stated: "I was still unable to get our FPR uploaded due to issues with the Government PIEE system. Depending on the file size limits on your end, I am emailing the files directly to you piece meal. Please acknowledge receipt as I send them."
- At 7:12 pm, the Contracting Officer emailed ▓▓▓▓▓▓▓ and stated, "[p]er Section L.3 of the

2

SUBJ: DENIAL OF AGENCY PROTEST OF HII SHIPCYCLE, LLC UNDER SOLICITATION
N00024-25-R-4135

solicitation, '[h]and-carried and mail delivered proposals will not be accepted. Submission of e-mail offers is not authorized for this solicitation, except for proprietary subcontractor submissions, as indicated below. The PIEE website is the only acceptable method of submission.' At this time, the Government cannot commit to how it would treat a late proposal submission."

- At 7:43 pm, ▮▮▮▮▮▮ emailed a screenshot showing the error message he received when trying to add a signature to the offer: "Offer identifier already exists for the selected CAGE, please enter a unique value."
- At 8:55 pm, ▮▮▮▮▮▮ emailed the Contracting Officer two MS Project Exchange attachments (.mmpx and .mpx).
- At 10:10 pm, ▮▮▮▮▮▮ emailed the Contracting Officer ShipCycle's account of the timeline and statement of facts.
- At 10:42 pm, the Contracting Officer received a PIEE notification via email that an offer was submitted late by ▮▮▮▮▮▮ for ShipCycle.
- At 11:39 pm, the Contracting Officer received a PIEE notification via email that an offer was submitted late by ▮▮▮▮ for ShipCycle.

On April 24, 2025, ShipCycle's Counsel notified the Navy of ShipCycle's "potential protest" if its late FPR would not be considered, alleged that the PIEE system malfunctioned, and again requested an extension of the deadline for submission of proposals. Ref. (h). In considering whether ShipCycle's late FPR could be accepted, the Contracting Officer noted that in order to retrieve the late submission from the PIEE platform, PIEE required him to select an exception to FAR 15.208 (the "late-is-late" rule) (FAR 52.215-1 as incorporated in ref. (a)) from a drop-down menu. While the Navy evaluated the timely submitted FPRs, the Contracting Officer investigated ShipCycle's concerns regarding the PIEE system's functionality and the potential application of an exception to the FAR's "late-is-late" rule that might allow the Navy to accept ShipCycle's late FPR. ShipCycle's Counsel provided a subsequent submission of facts for the Contracting Officer's consideration on May 4, 2025. Ref. (i). By May 30, 2025, the Contracting Officer notified ShipCycle that it was eliminated from the competition, because it submitted a late FPR. Ref (j). Specifically, the Contracting Officer explained:

> While the Government received ShipCycle's Volume I, SF 33 Solicitation Set/Model Contract, proposal at 14:52, i.e., 2:52 p.m., on 23 April 2025, the Government did not receive ShipCycle's FPR for its Volume II Technical Proposal, Volume III Price Proposal, or Volume IV Past Performance Proposal by the time specified. Accordingly, the Navy found ShipCycle's FPR submission was unresponsive as ShipCycle did not submit and the Navy did not receive a meaningful proposal by the deadline. ShipCycle's material omission of Volumes II-IV by the deadline, and subsequent submission attempts after the deadline, resulted in the Navy eliminating ShipCycle's proposal as late and excluding it from consideration for award, in accordance with [the Solicitation].

Ref. (j). Additionally, the Contracting Officer conveyed his determination that none of the exceptions to the "late-is-late" rule were met, noting the Defense Information Systems Agency (DISA) and PIEE program office findings that PIEE did not experience any system issues on April 23, 2025. *Id.*

ShipCycle's agency protest followed on June 9, 2025. Ref. (k). In its protest, ShipCycle asserts that the Navy was required to consider either its initial proposal or late FPR because: the Government's electronic system malfunctioned, preventing ShipCycle from submitting its FPR on time; ShipCycle's FPR was either in the Government's control prior to the time set for receipt of proposals; or it was a late modification of an otherwise successful proposal that made its terms more favorable to the Government; and the Navy failed to evaluate price reasonableness consistent with the FAR and Solicitation, because the awardee's price was higher than ShipCycle's proposed price. *Id.*

On June 18, 2025, the Contracting Officer concluded ShipCycle's post-award debrief. Ref.(l). As part of its debrief, ShipCycle asked whether the Navy would evaluate ShipCycle's initial proposal as modified by the portions

SUBJ:  DENIAL OF AGENCY PROTEST OF HII SHIPCYCLE, LLC UNDER SOLICITATION
N00024-25-R-4135

of ShipCycle's FPR that were submitted prior to 3 pm. *Id.* at 1. In his response, the Contracting Officer affirmed the determination communicated to ShipCycle on May 30, 2025, that eliminated ShipCycle from the competition. The Contracting Officer reminded ShipCycle that the submission it transmitted prior to 3:00 pm on April 23, 2025, was unresponsive. *Id.* at 1-2.

For the reasons described herein, NAVSEA denies ShipCycle's protest.

II. The Navy's Decision to Eliminate ShipCycle from the Competition Was Reasonable because ShipCycle's FPR was Late, None of the Exceptions to the FAR Late-is-Late Rule Apply, and ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

The Navy eliminated ShipCycle from the competition, because it did not submit a meaningful proposal by the required date and time. The Contracting Officer took ShipCycle's assertions regarding the PIEE platform seriously, and, upon a full investigation, found no evidence of a system failure, and determined that none of the exceptions to the "late-is-late" rule applied.

A. The Navy Found No Evidence of an Interruption of Normal Government Processes or Systemic Failure.

ShipCycle asserts that its late FPR should have been considered timely, because there was an emergency or unanticipated event that interrupted normal Government processes so that ShipCycle's complete proposal could not be received at the Government office designated for receipt of proposals by the exact time required, and ShipCycle's FPR was received by the Government before the same time of day on the first work day on which normal Government processes resumed. Ref. (k) at 5-8. Specifically, ShipCycle asserts that a systemic failure of PIEE occurred on April 23, 2025, interrupting normal Government processes and making ShipCycle's 10:41 pm FPR submission on the same day timely. However, ShipCycle has not provided any evidence of a systemic failure, nor did the Navy's investigation identify any evidence of a systemic failure.

It is the offerors' responsibility to submit proposals and revisions to proposals to the Government office designated in the solicitation by the time specified. FAR 52.215-1(c)(3)(i); *NAG Marine*, B-422899, Dec. 12, 2024, 2024 CPD ¶ 308 at 3 ("[w]hen transmitting a proposal electronically, it is an offeror's responsibility to submit its proposal sufficiently in advance of the time set for receipt of proposals to ensure proper delivery of the proposal and timely receipt by the agency.").

The screenshots and timeline provided by ShipCycle do not present evidence of a failure of the Government system. Rather, the exhibits demonstrate that ShipCycle did not begin the process in sufficient time to complete its upload to PIEE. While ShipCycle highlights excerpts from the Contracting Officer's statement that refreshing the PIEE landing page resolved any issues he experienced as evidence of a systemic failure, the full statement demonstrates that the Contracting Officer confirmed to ShipCycle that PIEE was working properly, and he did not experience any errors. "Just logging in now I had some issues with the landing page of the Solicitation module, but they were cleared up when I refreshed the page. Is there a specific error message you are receiving?" Ref. (k), Exhibit A, Attachment F. At 2:27 pm, in response to the Contracting Officer's question asking whether he received a specific error message, ▓▓▓▓▓▓▓▓ replied "I am trying to save each file individually now but it is really slow. I don't see how they will all be saved by 3pm and need an extension."

Even assuming that a slow landing page was a malfunction, a finding of a systemic failure of an online Government portal requires more than occasional malfunctioning of the system. *NAG Marine* at 5; *Fed. Acquisition Servs. Team, LLC*, B-410466, Dec. 31, 2014, 2014 CPD ¶20 at 3 (*FAST*). In *FAST*, the Government Accountability Office (GAO) found that there was no systemic failure where all offerors that diligently pursued submission of their proposals were eventually successful after some were initially bounced back due to excessive file size. *FAST* at 3. That is not the case here. The PIEE system did not prevent any offeror from uploading and submitting their proposals. All offerors that attempted to submit an FPR to PIEE were able to do so. Additionally, no other offeror was hindered by PIEE from submitting an on time FPR. ShipCycle not uploading its entire proposal in sufficient time to meet the deadline does not amount to a systemic failure of an online Government portal. Notwithstanding, the Contracting Officer investigated ShipCycle's concerns regarding PIEE's functionality to ensure there was no such issue.

SUBJ: DENIAL OF AGENCY PROTEST OF HII SHIPCYCLE, LLC UNDER SOLICITATION N00024-25-R-4135

Specifically, the Contracting Officer contacted the PIEE help desk and the PIEE Program Management Office at the Defense Logistics Agency (DLA) to investigate the errors described by ShipCycle and determine whether there were any problems with PIEE that would have impacted an offeror's ability to submit a proposal. DISA and DLA determined that there were no system issues with the PIEE eBusiness Suite on April 23, 2025. Accordingly, ShipCycle's assertion that its 10:41 pm or 11:38 pm FPR, submitted well after the 3:00 pm deadline, was timely due to an emergency or unanticipated event that interrupted normal Government processes is denied.

B. The Navy Could Not Accept ShipCycle's FPR based on the "Government Control" Exception.

The "Government control" exception does not apply because the Contracting Officer determined that accepting the FPR would have delayed the acquisition, and there is no evidence that ShipCycle's FPR was received at the designated installation prior to 3:00 pm on April 23, 2025.

In its protest, ShipCycle asserts that the Navy must accept ShipCycle's late FPR because it was in the Government's control prior to the required date and time. However, ShipCycle did not submit a meaningful FPR prior to the 3:00 pm deadline on April 23, 2025. FAR 52.215-1(c)(3)(ii)(A)(2), as incorporated by reference (a), states:

> Any proposal, modification, or revision received at the Government office designated in the solicitation after the exact time specified for receipt of offers is "late" and will not be considered unless it is received before award is made, the Contracting Officer determines that accepting the late offer would not unduly delay the acquisition; and . . . There is acceptable evidence to establish that it was received at the Government installation designated for receipt of offers and was under the Government's control prior to the time set for receipt of offers.

FAR 52.215-1(c)(3)(ii)(A)(2).

The Navy continued to evaluate the timely submitted FPRs while investigating ShipCycle's assertions in parallel. The Contracting Officer considered the Navy's schedule requirements, and based on the facts available at the time, determined that accepting ShipCycle's late FPR would unduly delay the acquisition. Ref. (j) at 2.

Even if the Contracting Officer could have accepted ShipCycle's late FPR in sufficient time to maintain the Navy's schedule, there are no facts to support that ShipCycle's late FPR was received at the Government installation designated for receipt of offers and was under the Government's control prior to 3:00 pm on April 23, 2025. At 2:52 pm, the Contracting Officer received notification from PIEE that an offer was submitted. At 2:57 pm, ▮▮▮▮▮▮▮▮ informed the Contracting Officer via phone call that the offer submitted was not complete and only contained the files that ShipCycle was able to upload by that time. In ▮▮▮▮▮▮▮▮ 10:10 pm email to the Contracting Officer, he stated, "as of 2:51 pm, ShipCycle still had only been able to upload Volume I of its proposal." Protest Exhibit A, Attachment A. Thus, PIEE was functioning such that ShipCycle was able to submit a partial proposal. As described in Section A, DISA and DLA concluded that PIEE was fully operational on April 23, 2025. ShipCycle did not begin its upload with sufficient time to complete it prior to 3:00pm on April 23, 2025. According to ShipCycle's timeline, its complete FPR was not submitted until at least 9:41 pm on April 23, 2025. Ref. (k), Exhibit A, Attachment B ("10:47 PM [▮▮▮▮▮▮▮▮] sends text that he successfully uploaded the remaining files at 9:41 pm."). Accordingly, ShipCycle's assertion that the Navy must accept ShipCycle's late FPR under the "Government control" exception is denied.

C. ShipCycle's Late FPR Was Not a Late Modification of an Otherwise Successful Proposal.

ShipCycle asserts that the Navy is required to accept ShipCycle's late FPR because it was a late modification of an otherwise successful proposal; however, this position is contrary to the FAR since its April 23, 2025 submission was neither a proposal modification nor was its proposal otherwise successful. Specifically, FAR 52.215-1(c)(3)(ii)(B) states, "a late modification of an otherwise successful proposal that makes its terms more favorable to the Government, will be considered at any time it is received and may be accepted." However, ShipCycle's late FPR was not a proposal modification. FAR 15.001 defines "proposal modification" as "a change made to a proposal before the solicitation closing date and time, or made in response to an amendment, or made to correct a mistake at any time before award." FAR 15.001. ShipCycle's final *proposal revision*, was a proposal revision, defined as "a change to a proposal made after the solicitation closing date, at the request of or as allowed by a contracting officer,

5

SUBJ: DENIAL OF AGENCY PROTEST OF HII SHIPCYCLE, LLC UNDER SOLICITATION
N00024-25-R-4135

as the result of negotiations." FAR 15.001. ShipCycle submitted its FPR at the request of the Contracting Officer at the close of discussions, otherwise known as "negotiations" per FAR 15.306(d). Given ShipCycle's submission was a proposal revision and not a late modification, the Navy could not consider ShipCycle's late FPR as a late modification of an otherwise successful proposal.

Even if ShipCycle's late FPR was a proposal modification, it was not "otherwise successful" because its initial proposal was unacceptable. "The term 'otherwise successful' means the government may accept a late modification from an offeror who is already in line for award. . . [A contractor] [i]s not in line for award . . . [where its] initial proposal was not acceptable." *Integrated Bus. Sols., Inc.*, B-292239, July 9, 2003, 2003 CPD ¶122.

Here, the Navy properly found ShipCycle's initial proposal was unacceptable in accordance with the underlying Solicitation requirements. Specifically, Section M.II of the Solicitation defined "unacceptable" for purposes of the Factor I: Technical/Management Approach assessment, as "proposal does not meet requirements of the solicitation and thus, contains one or more deficiencies and is unawardable, and/or risk of performance is unacceptably high." Ref. (a), Sec. M.11, at 106. In opening discussions, the Navy communicated the risks in ShipCycle's initial proposal which caused it to be Unacceptable in its April 2, 2025, discussions letter, and again in its June 18, 2025, response to ShipCycle's enhanced debrief questions. Notably, the Navy evaluated ShipCycle's Mandatory Compliance as Incomplete, which, under Section M of the Solicitation, could have resulted in ShipCycle's proposal not being evaluated further and being ineligible for award. As disclosed during discussions, ███████████████████████ ShipCycle's initial proposal also ███████████████████████ Additionally, ShipCycle's initial proposal provided ███████████████████████ Accordingly, ShipCycle's late FPR was neither a "modification" nor "otherwise successful," and this basis of ShipCycle's agency-level protest is denied. ShipCycle has not demonstrated that the Navy's evaluation of its initial proposal was unreasonable.

III. The Navy's Price Evaluation was Reasonable as It Was Conducted in Accordance with the FAR and the Solicitation.

ShipCycle asserts that the Navy's price reasonableness evaluation was not consistent with the Solicitation and the FAR; however, ShipCycle's reliance on its own price and the awardee's price as the basis for this allegation is unsupported. As documented below, the Navy conducted its price reasonableness determination in accordance with the Solicitation and the FAR.

Specifically, under Section M, the Solicitation provided:

> Each Offeror's price will be evaluated for reasonableness. The [p]rice reasonableness evaluation will include, but is not limited to the following:
>
> a) Comparison of proposed prices received in response to the Solicitation[;]
>
> b) Comparison of Offeror's proposed price with the Government's independent cost estimates, historical data and other data available to the Government.

Ref. (a), Section M at 108-109. Additionally, FAR 15.404-1(a)(1) states:

> The Contracting Officer is responsible for evaluating the reasonableness of the offered prices. The analytical techniques and procedures described in this subsection may be used, singly or in combination with others, to ensure that the final price is fair and reasonable. The complexity and circumstances of each acquisition should determine the level of detail of the analysis required.

FAR 15.404-1(a)(1).

SUBJ: DENIAL OF AGENCY PROTEST OF HII SHIPCYCLE, LLC UNDER SOLICITATION
N00024-25-R-4135

Consistent with the Solicitation and discretion established by the FAR, the Contracting Officer determined that comparison of proposed prices received in response to the Solicitation, and comparison to the Independent Government Cost Estimate (IGCE) were appropriate for this procurement. FAR 15.404-1(b)(2)(i) and (v).

As communicated in reference (l), the Navy evaluated offerors' proposed prices for reasonableness in accordance with the Section L proposal requirements and the Section M evaluation criteria. ShipCycle has not demonstrated that the Navy's price reasonableness evaluation was inconsistent with the FAR or the Solicitation.

While ShipCycle asserts that the award price was unreasonable, ███████████████, the Navy properly excluded ShipCycle's unacceptable initial proposal, which was otherwise revoked by its FPR submission, and its late FPR submission from the price reasonableness evaluation. While ShipCycle asserts ███████████████ the facts and law do not support this position. *See, Tolliver Grp., Inc. v. United States*, 172 Fed. Cl. 581, 597-98 (Fed. Cl. 2024) ("[w]ithout a showing that the Contracting Officer's conclusion is irrational, the Court will not substitute its judgment for that of the agency where the Contracting Officer used a FAR approved technique to determine that the prices were reasonable."). Therefore, ShipCycle's protest ground that the Navy failed to evaluate price reasonableness consistent with the FAR and the Solicitation is denied.

IV. ShipCycle's Protest is Denied in Its Entirety.

The Navy's decision to eliminate ShipCycle from the competition was reasonable because its FPR was late, none of the exceptions to the FAR "late-is-late" rule apply, and ShipCycle's initial proposal was evaluated as unacceptable and was subsequently revoked by its late FPR submission. Additionally, the Navy's price reasonableness evaluation was consistent with the FAR and the Solicitation. Accordingly, ShipCycle's protest is denied in its entirety.

Respectfully,

BOYLES.KRISTIN  Digitally signed by
                BOYLES.KRISTINE.R
                Date: 2025.07.08 11:51:13 -04'00'

KRISTINE R. BOYLES
Director of Contracts,
Naval Sea Systems Command

cc via e-mail:
Kenneth Weckstein
Counsel for HII ShipCycle, LLC