# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

## BID PROTEST

| | |
|---|---|
| ENERGY SOLUTIONS FEDERAL SUPPORT, LLC DERIVATIVELY ON BEHALF OF HII SHIPCYCLE, LLC., |  |
| *Plaintiff,* | |
| | No. 25-1336 |
| v. | Judge Philip S. Hadji |
| THE UNITED STATES, | |
| *Defendant,* |  |
| and | |
| NORTHSTAR MARITIME DISMANTLEMENT SERVICES, LLC, | |
| *Defendant-Intervenor.* | |

## DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS, CROSS-MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD, AND OPPOSITION TO PLAINTIFF'S MOTION FOR JUDGMENT ON THE RECORD

BRETT A. SHUMATE
Assistant Attorney General

PATRICIA M. McCARTHY
Director

STEVEN J. GILLINGHAM
Assistant Director

Of counsel:
Samantha J. Hogue
Office of Counsel
Naval Sea Systems Command

THOMAS J. ADAIR
Trial Attorney
Civil Division, U.S. Department of Justice
P.O. Box 480
Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 353-7955
Email: thomas.adair@usdoj.gov

*Attorneys for the United States*

## Table of Contents

I.   Energy Solutions Has Failed to Establish that It Has Standing to Bring This Suit................. 1

    A.   Energy Solutions Lacks Substantive Standing as Reflected by Its Failure to Comply with RCFC 23.1 ...................................................................................................... 2

        1.   Energy Solutions Is Stuck with the Board's Decision Not to Authorize This Protest ........................................................................................................... 3

        2.   Energy Solutions Fails to Establish Demand Futility....................................... 5

    B.   Energy Solutions Lacks the Requisite Statutory Standing......................................... 7

II.  Energy Solutions's Claims Fail on the Merits .................................................................. 10

    A.   The Government Control Exception Does Not Apply............................................. 10

    B.   There Is No Evidence of an Error with PIEE ........................................................ 15

    C.   The Navy Was Not Required to Grant ShipCycle an Extension.............................. 16

    D.   Energy Solutions Is Not Entitled to a Permanent Injunction .................................. 19

III. Conclusion ..................................................................................................................... 19

## Table of Authorities

Page(s)

**Cases**

*Aronson v. Lewis*,
473 A.2d 805 (Del. 1984)..................................................................3

*Brehm v. Eisner*,
746 A.2d 244 (Del. 2000)..................................................................3

*CACI, Inc.-Fed. v. United States*,
67 F.4th 1145 (Fed. Cir. 2023) .......................................................10

*City of Birmingham Ret. & Relief Sys. v. Good*,
177 A.3d 47 (Del. 2017)....................................................................6

*Competitive Innovations, LLC v. United States*,
177 Fed. Cl. 717 (2025) ............................................................18, 19

*Daily Income Fund, Inc. v. Fox*,
464 U.S. 523 (1984)...........................................................................7

*De Archibold v. United States*,
499 F.3d 1310 (Fed. Cir. 2007) .........................................................7

*Domenico Garufi v. United States*,
238 F.3d 1324 (Fed. Cir. 2001) .......................................................17

*El Pollo Loco Holdings, Inc. v. Trimaran Pollo Partners, L.L.C.*,
280 A.3d 133 (Del. 2022)...................................................................7

*First Hartford Corp. Pension Plan & Trust v. United States*,
194 F.3d 1279 (Fed. Cir. 1999) .........................................................8

*Grimes v. Donald*,
673 A.2d 1207 (Del. 1996).................................................................4

*Guardian Moving & Storage Co., Inc. v. United States*,
122 Fed. Cl. 117 (2015) ...................................................................18

*In re Cysive, Inc. Shareholders Litig.*,
836 A.2d 531 (Del. Ch. 2003) ...........................................................4

*In re Walt Disney Co. Derivative Litig.*,
906 A.2d 27 (Del. 2006).............................................................4, 15

*Johnson Controls Gov't Sys., LLC v. United States*,
　　125 Fed. Cl. 289 (2016) ........................................................................... 14, 15

*Kamen v. Kemper Fin. Services, Inc.*,
　　500 U.S. 90 (1991) ...................................................................................... 2, 3

*Kowalski v. Tesmer*,
　　543 U.S. 125 (2004) .......................................................................................... 7

*Kropp Holdings, Inc. v. United States*,
　　176 Fed. Cl. 512 (2025) .................................................................................... 12

*Labatt Food Serv., Inc. v. United States*,
　　577 F.3d 1375 (Fed. Cir. 2009) ...................................................................... 17

*Lujan v. Defs. of Wildlife*,
　　504 U.S. 555 (1992) .......................................................................................... 9

*Naval Systems, Inc. v. United States*,
　　153 Fed. Cl. 166 (2021) ............................................................................. 11, 14

*On-Ramp, Inc. v. United States*,
　　104 Fed. Cl. 151 (2012) .................................................................................. 18

*Orion Tech., Inc. v. United States*,
　　102 Fed. Cl. 218 (2011) .................................................................................. 18

*Percipient.AI, Inc. v. United States*,
　　No. 2023-1970, 2025 WL 2472671 (Fed. Cir. Aug. 28, 2025) ............................ 7

*Pine Products Corp. v. United States*,
　　15 Cl. Ct. 11 (1988) .......................................................................................... 7

*Ryan v. Gifford*,
　　918 A.2d 341 (Del. Ch. 2007) ........................................................................... 4

*Sicom Sys., Ltd. v. Agilent Techs., Inc.*,
　　427 F.3d 971 (Fed. Cir. 2005) ........................................................................... 1

*Starr Int'l Co., Inc. v. United States (Starr I)*,
　　111 Fed. Cl. 459 (2013) .................................................................................. 2, 3

*Syncon, LLC v. United States*,
　　154 Fed. Cl. 442 (2021) ............................................................................. 13, 16

*United Food & Com. Workers Union & Participating Food Indus. Emps. Tri-State Pension Fund
　　v. Zuckerberg*, 262 A.3d 1034 (Del. 2021) ....................................................... 3, 6

*Veterans Tech., LLC v. United States,*
  133 Fed. Cl. 146 (2017) ...................................................................................................7

**Statutes**

28 U.S.C. § 1491(b)..................................................................................................2, 7, 9, 10

**Rules**

RCFC 12(b)(1) ...................................................................................................................10

RCFC 12(b)(6) ...................................................................................................................10

RCFC 23.1 ......................................................................................................................2, 5, 7

RCFC 52.1 .............................................................................................................................1

**Regulations**

FAR 15.208(e) ....................................................................................................................15

FAR 15.208(g) ....................................................................................................................17

FAR 33.103(d)(2)................................................................................................................19

Pursuant to Rules 12(b)(1) and 12(b)(6) of the Rules of the United States Court of Federal Claims (RCFC), defendant, the United States, has moved to dismiss Plaintiff, EnergySolutions Federal Support, LLC's (Energy Solutions) derivative bid protest on behalf of HII ShipCycle, LLC (ShipCycle) because Energy Solutions lacks standing to bring this suit and because it has failed to meet the pleading requirements for a derivative suit. Should the Court consider the merits of Energy Solutions's claims, the Government respectfully requests pursuant to RCFC 52.1, that the Court deny Energy Solutions's motion for judgment on the administrative record (MJAR) and grant our cross-motion for judgment on the administrative record (Cross-MJAR) because the strict late-is-late rule bars consideration of ShipCycle's late proposal, there is no evidence of an error with the Government's proposal submission platform, and there was no abuse of discretion on the part of the Navy's Contracting Officer (CO).

## I.    Energy Solutions Has Failed to Establish that It Has Standing to Bring This Suit[1]

As set forth in the opening briefs of the Government and Intervenor, Energy Solutions's attempt to bring this protest derivatively appears unprecedented and is rife with standing problems. ECF No. 46 and 47. Energy Solutions lacks substantive standing to pursue the subject claims because it has failed to establish an exception to the business judgment rule that might let it pursue ShipCycle's rights when the board of directors chose not to do so. Relatedly,

---

[1] In the interest of full disclosure, the Government notifies the Court of the following: At 5:51 p.m. EDT the day before this brief was due, the undersigned counsel for the Government received a phone call from Energy Solutions's counsel advising him that the ShipCycle board of directors has had a change of heart and had earlier that evening authorized this protest to be brought on behalf of ShipCycle. This was later confirmed by an email from Plaintiff's counsel at 9:36 a.m. the morning of the day on which this brief is due and less than a week before oral argument. The Government notes that "[s]tanding must be present at the time the suit is brought." *Sicom Sys., Ltd. v. Agilent Techs., Inc.*, 427 F.3d 971, 975–76 (Fed. Cir. 2005). Thus, the attempt to cure Energy Solutions's standing defects is untimely and this protest should be dismissed for the reasons set forth in our motion to dismiss and below.

Energy Solutions has failed to plead with particularity its right to proceed with a derivative suit as required by RCFC 23.1.  Further, Energy Solutions is not an interested party under 28 U.S.C. § 1491(b) and it thus does not have statutory standing to bring this bid protest.

**A.    Energy Solutions Lacks Substantive Standing as Reflected by Its Failure to Comply with RCFC 23.1**

"[T]he purpose of [a] derivative action [i]s to place in the hands of the individual shareholder a means to protect the interests of the corporation from the misfeasance and malfeasance of faithless directors and managers."  *Kamen v. Kemper Fin. Services, Inc.,* 500 U.S. 90, 95 (1991).  To prevent abuse of this remedy, unless excused by extraordinary conditions, a shareholder must demonstrate that the corporation itself wrongfully "refused to proceed after suitable demand" on the board before that shareholder may obtain status as a derivative suit plaintiff.  *Id.* at 95-96.  Analysis of whether the directors wrongfully refused to authorize litigation upon a shareholder's demand is evaluated under the law under which the company was incorporated because this implicates substantive corporate powers.  *Id.*; *Starr Int'l Co., Inc. v. United States (Starr I)*, 111 Fed. Cl. 459, 469 (2013), *vacated in part on other grounds*, 856 F.3d 953 (Fed. Cir. 2017).

The requirement that a derivative suit plaintiff make a demand on the board of directors unless excused for extraordinary circumstances is reflected in RCFC 23.1, which requires the plaintiff to plead with particularity all efforts undertaken to obtain board approval and the reasons for the failure to obtain such approval or for not making the effort to obtain that approval.  *Kamen*, 500 U.S. at 96 (discussing the identical Federal Rule of Civil Procedure 23.1).

Energy Solutions previously asserted that it did not need to demand that the ShipCycle board of directors vote on whether to authorize this protest because doing so would have been futile.  Am. Compl., ECF 41, ¶ 13.  Now, however, Energy Solutions claims "there are enough

facts for the Court to find that ShipCycle did essentially make a demand of ShipCycle's Board to initiate a protest at the Court . . . and it was unjustifiably rejected."  Reply, ECF No. 48, at 25. Thus, Energy Solutions now asserts that the Court should not consider the test for futility set out in the *Zuckerberg* case.  *Id.*   The question of whether the decision not to authorize the protest was unjustified turns on an analysis of Energy Solutions's factual allegations under the business judgment rule.  Whether or not requesting a vote was futile turns on an analysis of whether the board members "are under an influence which sterilizes their discretion" as determined by the Zuckerberg test.  *United Food & Com. Workers Union & Participating Food Indus. Emps. Tri-State Pension Fund v. Zuckerberg*, 262 A.3d 1034, 1048 (Del. 2021).

> **1.    Energy Solutions Is Stuck with the Board's Decision Not to Authorize This Protest**

Although no formal vote was undertaken, according to Energy Solutions's complaint, the ShipCycle board chose not to authorize this litigation.  Am. Compl. at 5.  Under Delaware law, the business judgment rule protects decisions not to pursue litigation, as measured against a gross negligence standard and presumes that decision "included consideration of all material information reasonably available."  *Brehm v. Eisner*, 746 A.2d 244, 259 (Del. 2000).  The business judgment rule also presumes the corporation's directors act on an "informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company." *Aronson v. Lewis*, 473 A.2d 805, 812 (Del. 1984), *overruled in part on other grounds by Brehm v. Eisner*, 746 A.2d 244 (Del. 2000)) (internal citations omitted); *see also Starr I,* 111 Fed. Cl. at 470.  The presumption that directors act on a good faith basis when declining to pursue litigation is determinative "unless the shareholder can allege facts with particularity creating a reasonable doubt that the board is not entitled to the benefit of the presumption."  *Starr I*, 111 Fed. Cl. at 470 (quoting *Grimes v. Donald*, 673 A.2d 1207, 1219 (Del. 1996).  Reasonable doubt can be

raised if a plaintiff shows that "the board act[ed] intentionally, in bad faith, or for personal gain." *Ryan v. Gifford*, 918 A.2d 341, 357 (Del. Ch. 2007); *see also In re Cysive, Inc. Shareholders Litig.,* 836 A.2d 531, 550, n.26 (Del. Ch. 2003) ("Unless the plaintiffs can show that the independent board majority was duped by the interested block holder, abdicated its responsibilities so as to have acted in subjective bad faith, or acted so irrationally so as to have committed a violation of their duty of care, the business judgment standard of review would condemn their claims.")

In its reply, Energy Solutions now claims that the decision of ShipCycle's board not to authorize this protest is not entitled to deference because two of the board members have a conflict of interest between their duties to ShipCycle and ShipCycle's ▮▮▮▮ shareholder HII Nuclear Inc., a Huntington Ingalls affiliate.  But, as explained below, that allegation and the scant support Energy Solutions offers do not carry Energy Solutions's difficult burden of having to overcome the presumption that the business judgment rule protects the board's decision not to pursue litigation.  *E.g., In re Walt Disney Co. Derivative Litig.,* 906 A.2d 27, 74 (Del. 2006) ("[T]he board's decision will be upheld unless it cannot be attributed to any rational business purpose.") (internal quotations omitted).

Indeed, all Energy Solutions offers in an attempt to overcome this presumption is the subjective interpretation by its Chief Operating Officer, William Morrison, of one phone conversation.  Am. Compl. ¶¶ 12-13, Appx. A ¶ 15.  Mr. Morrison's declaration recites that during that conversation, he was told that the board members from HII Nuclear, Inc. would not vote in favor of bringing this protest.  *Id.* at Appx. A ¶ 15.  He then offers his interpretation of this conversation saying that "as he understood it" the decision not to authorize this protest was because HII Nuclear concluded not pursuing the protest was in its "best interest." *Id.*

There are multitude of potential reasons that are all reasonable and protected by the business judgment rule not to bring this protest. For example, the directors may have concluded that it is in the interest of both ShipCycle and HII Nuclear to preserve resources (including staffing, financial, and time) that would be expended in this protest.  Energy Solutions neglects the many business reasons, such as these, not to authorize this protest when it myopically focuses on the fact it offered to pay the legal fees associated with this protest so there could be "no cost risk to ShipCycle or other business reason for ShipCycle not to pursue a protest."  Reply at 24. Other than alleging that the directors from HII Nuclear believed not pursuing this protest was in that company's best interest, Energy Solutions fails to allege facts with any particularity to substantiate that the alleged pursuit of HII's interests conflicted with ShipCycle's interests.  Mr. Morrison's speculation that the refusal to authorize this protest was "because of [HII Nuclear's] larger relationship with the Navy" does not suffice.  Energy Solutions's scant pleadings on this issue violate RCFC 23.1 because they do not allege with particularity that the board acted intentionally in bad faith, for personal gain, or irrationally.  Thus, deference to the business judgment rule that protects the board's decision condemns Energy Solutions's derivative status.

### 2.    Energy Solutions Fails to Establish Demand Futility

Although Energy Solutions now claims that ShipCycle's board chose not to authorize this suit, it originally pleaded that the requirement that it make a demand on the ShipCycle board for a formal vote to authorize this suit was excused because such a demand was futile.  Am. Compl. ¶ 15.  To this end, in its reply, Energy Solutions asserts that in the alternative to an actual decision from the board not to authorize this protest, it has met the pleading requirements for demand futility.  Reply at 26-27.

To meet the requirement that making a demand of the board would have been futile, a derivative plaintiff must establish that the futility was due to improper interests of the board members. *City of Birmingham Ret. & Relief Sys. v. Good*, 177 A.3d 47, 55 (Del. 2017). As we explained in our Motion to Dismiss, as did Intervenor, Energy Solutions has failed the test necessary to establish demand futility as set out in *Zuckerberg*, 262 A.3d at 1059.[2] ECF No. 47 at 23-24; ECF No. 46 at 23-27. According to the Delaware test for demand futility, the plaintiff must plead (and eventually prove) on a director-by-director basis that a majority of a board of directors received a material personal benefit in connection with the underlying dispute, would face a substantial likelihood of liability in connection with the underlying dispute, or lack independence from someone who received a material personal benefit in connection with the underlying dispute. *See Zuckerberg*, 262 A.3d at 1059.

Energy Solutions does not meaningfully refute the contention that it has failed the *Zuckerberg* test, clinging instead to Mr. Morrison's speculation that HII Nuclear's "larger relationship with the Navy" left the ShipCycle board members from HII Nuclear conflicted between their duties to each company. Reply at 26. Significantly, this speculation does not show a lack of independence from a person that benefits from the misconduct that is the subject of this litigation or otherwise affirmatively answer any of the *Zuckerberg* questions.[3] Mr.

---

[2] The *Zuckerberg* court explained that the purpose of the demand-futility analysis is to assess whether the board should be stripped of its decision-making authority because of interests that are outside the protection offered by the business judgment rule. *Id.* at 1059.

[3] Energy Solutions also asserts that the "Court does not need to consider the *Zuckerberg* test because there are enough facts for the Court to find that ShipCycle did essentially make a demand to ShipCycle's Board to initiate a protest at the Court." Reply at 25. But that test is not optional to a futility argument. Indeed, following its decision in *Zuckerberg*, the Delaware Supreme Court has held that a court "must review" on a director-by-director basis the *Zuckerberg* factors when analyzing demand futility. *Diep on behalf of El Pollo Loco Holdings, Inc. v. Trimaran Pollo Partners, L.L.C.*, 280 A.3d 133, 150 (Del. 2022).

Morrison's speculation based on vague hearsay statements made during a phone call, which is all that is found in the Amended Complaint, simply does not meet the requirement that Energy Solutions plead with particularity facts that establish demand futility. Thus, Energy Solutions has failed to comply with RCFC 23.1's requirements and it fails the demand futility test.

**B.    Energy Solutions Lacks the Requisite Statutory Standing**

28 U.S.C. § 1491(b) waives sovereign immunity for bid protests brought against the United States Government. It requires that any protestor be an "interested party." *Id.* As set forth in the Government's opening brief, as well as that of the Intervenor, Energy Solutions is not an "interested party" under § 1491(b) (the Tucker Act) because it is not "an actual or prospective bidder or offeror whose direct economic interest would be affected by the award of the contract or by failure to award the contract." Mot. to Dismiss, ECF 47, at 27-29 (citing *Percipient.AI, Inc. v. United States*, No. 2023-1970, 2025 WL 2472671, at *12 (Fed. Cir. Aug. 28, 2025); *see also* Intervenor's Mot. to Dismiss, ECF No. 46, at 11-18. A derivative suit is a narrow exception to the rule that the injured party bring suit to remedy the wrong it has suffered. *Kowalski v. Tesmer*, 543 U.S. 125, 129 (2004); *Daily Income Fund, Inc. v. Fox*, 464 U.S. 523, 532 (1984). Moreover, as a waiver of sovereign immunity, Section 1491(b) must be narrowly construed. *De Archibold v. United States*, 499 F.3d 1310, 1315 (Fed. Cir. 2007) ("waivers of sovereign immunity are strictly construed in favor of the sovereign . . . [and they] cannot be implied but must be unequivocally expressed.") (internal quotations omitted).[4]

Energy Solutions flouts this rule. As it concedes, there is no apparent statutory authority

---

[4] *See also, Veterans Tech., LLC v. United States,* 133 Fed. Cl. 146, 154 (2017) (holding that minority shareholder of offeror was not an "interested party" with standing to bring a protest);; *Pine Products Corp. v. United States*, 15 Cl. Ct. 11, 14 (1988) ("[T]he universal rule is that an individual co-venturer may not sue in his own name to enforce a liability owed the joint venture.").

or case law that authorizes a bid protest suit to be brought derivatively. ECF No. 48, at 22 ("The fact that the Federal Circuit has not yet examined whether derivative standing applies to bid protests does not mean that it does not."). Seeking to avoid its lack of standing, Energy Solutions dismisses this argument claiming that it is stepping into the shoes of the actual offeror, so it must be an interested party with standing. In doing so, Energy Solutions fails to meaningfully engage on the legal issues—such as the fact its argument expands the waiver of sovereign immunity—and the practical problems with allowing a minority shareholder to bring a bid protest suit when the actual offeror refuses to bring the suit. As set forth in the prior briefing, there are statutory and practical considerations countenancing against the expansion of Section 1491(b) that Energy Solutions requests this Court adopt by allowing its derivative claim.

Energy Solutions claims that it can bring a derivative suit pursuant to the Federal Circuit's holding in *First Hartford Corp. Pension Plan & Trust v. United States*, 194 F.3d 1279 (Fed. Cir. 1999). As set forth in the prior briefing, that case is distinguishable. In particular, that case involved Section 1491(a), not Section 1491(b), and the court limited its holding to "contract claims under a narrow set of circumstances." *Id.* at 1293-94. This distinction is important because Sections 1491(a) and 1491(b) differ in an important regard: Section 1491(a) merely addresses the type of claims this Court may hear whereas Section 1491(b) addresses both the type of claim and the party that may bring such suits. Allowing a derivative bid protest suit—where a shareholder advances the rights of another entity to impose obligations on that absent party—cannot be justified by the law, which requires a narrow construction of waivers of sovereign immunity. To the contrary, reading Section 1491(b), as Energy Solutions does, would expand the definition of an interested party under the Tucker Act, and run afoul of the Federal

Circuit's recent holding in *Percipient.AI* that an interested party must have a direct economic interest in the subject procurement.

Energy Solutions brushes off the practical concerns we and Intervenor raised. Energy Solutions's response to these concerns was basically "trust us, ShipCycle will perform the contract should it win this protest and the contract." This curt response ignores the implications of expanding 1491(b)'s definition of "interested parties," including the potential for considerably more bid protest suits brought by disappointed shareholders of contractors who did not win a government contract when that contractor no longer wants to pursue, or is unable to perform, the work. Allowing disappointed shareholders to bring derivative bid protest claims would be the proverbial tail wagging the dog all while leaving the Government with the possibility that it awards a contract to an offeror who no longer can or wants to perform the work.

Undeterred, Energy Solutions tries to reverse the burden of proof, asserting it is the Government's burden to show that ShipCycle is not able to perform the contract. Reply, ECF No. 48 at 23. The question here is whether Energy Solutions has standing, a burden that is unquestionably borne by the plaintiff, not the Government or the Court. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). Moreover, whether ShipCycle can perform the contract should it win this protest, highlights one of the practical problems with expanding this Court's bid protest jurisdiction to a whole new class of plaintiffs.

This Court's bid protest jurisdiction is limited to suits brought by "interested parties" who are "an actual or prospective bidder or offeror whose *direct* economic interest would be affected by the award of the contract or by failure to award the contract." 28 U.S.C. § 1491(b) (emphasis added). Energy Solutions is not an actual offeror with a direct economic interest in the procurement. Its interest flows from its minority interest in ShipCycle. This indirect interest is

insufficient. Thus, it lacks standing to bring this suit, and this Court does not have jurisdiction to hear it. Accordingly, this suit should be dismissed pursuant to RCFC 12(b)(6).[5]

## II.     Energy Solutions's Claims Fail on the Merits

Energy Solutions concedes ShipCycle's complete Final Proposal Revisions (FPRs) were not signed and submitted until after the deadline for submission. Reply at 8-9. While Energy Solutions alleges that the Government control exception to the late-is-late rule applies, it concedes that it could delete the files displayed on the screenshots found at AR 9825- 26 and then upload new and edited documents. Reply at 14-15. As such, there is no evidence that final documents had been transmitted to the Government and were in the Government's control. There is also no evidence of an error with the PIEE system that might excuse ShipCycle's tardy submission. Similarly, Energy Solutions fails to show that the Navy's Contracting Officer (CO) abused his discretion by not granting a last-minute extension to ShipCycle, particularly when the other offerors had already submitted their FPRs.

### A.     The Government Control Exception Does Not Apply

As set forth in our Cross-MJAR, Energy Solutions fails to satisfy the requirements for the Government control exception. ECF No. 47 at 31-37. The Government control exception "applies if four requirements are satisfied: (i) the offer is received before the award is made; (ii) consideration of the offer would not unduly delay the acquisition; (iii) the offer was received at the Government installation designated for receipt of offers; and (iv) the offer was under the

---

[5] In our Motion to Dismiss, we asserted that RCFC 12(b)(1) is the rule under which this suit should be dismissed for lack of standing because a lack of standing usually implicates the Court's power to adjudicate the dispute. The Federal Circuit, however, has distinguished between statutory and Article III standing and concluded that statutory standing does not implicate this court's jurisdiction. *CACI, Inc.-Fed. v. United States*, 67 F.4th 1145, 1151 (Fed. Cir. 2023). Thus, when a party lacks standing under 28 U.S.C. 1491(b), the applicable dismissal rule is RCFC 12(b)(6) for failing to state a claim upon which relief may be granted. *See id.*

Government's control prior to the time set for receipt of offers. *Naval Systems, Inc. v. United States*, 153 Fed. Cl. 166, 187 (2021).

Energy Solutions does not rebut the Government's contention that consideration of ShipCycle's offer would unduly delay this procurement other than to allege, without any authority, that the awardee, NorthStar, cannot currently receive the CVN-65 and that because the ship will not be moved during hurricane season, there will be no delay. These two contentions are unsubstantiated and not true. Reevaluating all of the offers following this protest would invariably add several months to this procurement and impose additional costs on the Navy.

Energy Solutions's argument that it has met the third and fourth prongs of the Government control exception rests on the two screenshots found at AR 9825-26. Energy Solutions claims they show that ShipCycle uploaded the entirety of its FPRs prior to the deadline for submission. MJAR at 22-24; Reply at 9-18 (citing AR 9825-26). As set forth in our Cross-MJAR and Intervenor's, these two screenshots do not evidence receipt at the designated installation or that control over ShipCycle's proposal had transferred to the Government. Cross-MJAR, ECF No. 47, at 29-37; Intervenor's Cross-MJAR, ECF No. 46, at 34-37. In fact, Energy Solutions concedes the files depicted in the screenshots could still be deleted and new files uploaded. Reply at 14-15. In other words, Energy Solutions concedes that the documents depicted in the screenshot could still be edited.

With regard to the third prong, pursuant to the solicitation, the installation designated for receipt of offers was not PIEE and submission was not complete until the CO and Contract Specialist (CS) received the submitted proposal. AR 177[6]; AR 7869-70. Thus, merely hitting a

---

[6] The solicitation further notified offerors that the PIEE website "is the only acceptable method of submission," and that "[t]imely submission to PIEE does not constitute complete submission. As such, Offerors [we]re *strongly encouraged to submit early* to allow time to

Government server is insufficient. Yet, Energy Solutions has not established that ShipCycle's proposal even hit a government server, let alone the designated installation, i.e., receipt by the CO and CS. *See, e.g., Kropp Holdings, Inc. v. United States*, 176 Fed. Cl. 512, 533-38 (2025) (holding that "alleging receipt by DISA servers is not enough, as DLA, not DISA, is the procuring entity" and the "Government installation designated for receipt of offers" was the submission inbox specified in the solicitation.). *Kropp* is instructive because in that case the Court found the DLA erred by accepting a late proposal. *Id.* In other words, in *Kropp,* the DLA did exactly what Energy Solutions says the Navy should have done here, i.e., accept a late proposal, but the Court concluded the DLA erred in doing do. *Id.*

Energy Solutions concedes it did not sign and submit the proposal displayed in the screenshots until hours after the submission deadline. MJAR, ECF No. 42, at 26. As we set forth in our prior brief and as Energy Solutions now concedes, until a proposal transmitted through PIEE is signed and submitted, uploaded files can be deleted and new files uploaded. Cross-MJAR at 33-34; Reply at 14-15. Although Energy Solutions concedes these facts, it argues its uploaded documents could not be edited. Reply at 14-15. Such a contention makes no sense given that Energy Solutions concedes that uploaded documents could be deleted and replaced by new, edited, documents until the entire submission was signed and submitted. Reply at 14-15 ("Once ShipCycle uploaded its FPR, ShipCycle could not edit its FPR unless it removed the FPR from the PIEE Solicitation Module. . . . the only way for ShipCycle to edit any material information in its FPR volume was to ***delete*** the attachment and upload a ***new***, edited attachment") (emphasis in the original). Further undermining Energy Solutions's argument is

---

confirm receipt of the proposal materials with the [Procuring Contracting Officer] or [Contract Specialist]." AR 177 (emphasis added).

the fact that the proposal documents depicted in the screenshots were uploaded by Jerome

Thomas, but the FPRs that were actually submitted hours after the deadline were signed and

submitted by Daniel Moretz.  *cf.* AR 9825-26; AR 8064-65.

Energy Solutions cites the lack of certain information from DISA and the DLA about the

documents depicted in the screenshots to imply the existence of a scandal.  Reply at 11-12.

Given that those documents could be deleted and replaced until the proposal is actually

submitted, it is not surprising that there is no record of what was and was not uploaded by Mr.

Thomas.  In fact, the reality that there is no record of what Mr. Thomas uploaded only serves to

underscore that ShipCycle did not actually submit its offer by the deadline.

Energy Solutions's attempts to distinguish the case law cited by the Government and

Intervenor are unconvincing.  In particular, as Intervenor pointed out, the facts at issue in

*Syncon, LLC v. United States*, 154 Fed. Cl. 442 (2021) are remarkably similar to those in this

case.  There Judge Bruggink denied a protest asserting the Government control exception to the

late-is-late rule involving the DOD SAFE website.  *Id.*  Explaining his ruling, Judge Bruggink

noted that the protestor's screenshots of it accessing the DOD SAFE submission portal, "[did]

not show a successful submission" and they did not "show a confirmation email from the DOD

SAFE site," which is sent upon a successful upload.  *Id.* at 457.  Energy Solutions argues that

unlike the screenshots in *Syncon*, the screenshots here do not just demonstrate attempts to upload

ShipCycle's FPRs, but show that they actually were uploaded.  This distinction is unavailing.

ShipCycle's FPRs were inarguably not timely signed and submitted and the screenshots do not

show more than an attempt to upload documents.  To this end, the screenshots do not reveal what

was uploaded.  Moreover, because the FPRs that were actually submitted to the Navy hours past

the deadline were submitted by a different individual, we do not know if the documents depicted in the screenshots were the final documents actually submitted hours later by ShipCycle.

As we set forth in our prior brief, the facts here are also similar to *Naval Sys., Inc. v. United States*, 153 Fed. Cl. 166 (2021). Cross-MJAR at 35-36. Energy Solutions attempts to distinguish that case from the present one by again pointing to the screenshots purporting to show it uploaded its proposal. Reply at 11. While the existence of the purported screenshots constitute one difference between the two cases, in *Naval Systems*, Judge Solomson never held that the existence of purported screenshots alone would suffice to establish Government control. As set forth above, we do not know what those documents purportedly uploaded were, they were not actually in the Government's control because they could be deleted and replaced, and the final proposal that was received was submitted by a different person than the person who purportedly uploaded the documents displayed in the screenshot. Like *Naval Systems*, Energy Solutions's argument is little more than a bald assertion by the protestor that it timely uploaded its final proposal documents. *See id.* at 187.

Further, Judge Solomson's conclusion in *Naval Systems* that the offeror is the "least cost avoider," also cuts against Energy Solutions's argument here. *Id.* at 188; Cross-MJAR at 35. Energy Solutions did not address this argument in its reply.

Similarly, Energy Solutions's attempt to distinguish *Johnson Controls* fails. Energy Solutions attempts to distinguish that case by arguing that the judge there simply got it wrong because the judge did not evaluate an intermediate Government installation where the proposal was submitted before it was ultimately transferred to the ordering agency. Reply at 16 (citing *Johnson Controls Gov't Sys., LLC v. United States*, 125 Fed. Cl. 289, 293 (2016)). There, like here, the protester could have changed or withdrawn its proposal after uploading it to the

14

FedConnect system used for the submission of proposals. *Id.* Explaining its rejection of the protestor's arguments, the Court stated that "[t]o construe the instant facts where Plaintiff uploaded the proposal but did not send it, as within the Government's control, is stretching the language of the FAR beyond reason, and there would be no tangible limit to the time an offeror could hold an uploaded (albeit unmodified) proposal before submitting." *Id.*

Finally, Energy Solutions cites FAR 15.208(e) in an apparent attempt to argue if our Governent control arguments, and those of the Intervenor, were true, it would mean the Government never has control over a proposal. Reply at 15. This argument makes little sense. FAR 15.208(e) allows an offeror to withdraw its offer from consideration in a procurement. It does not relate to evaluation of the Government control exception.

> **B.     There Is No Evidence of an Error with PIEE**

As we set forth in our opening brief, the Navy's investigation turned up no evidence of an error or malfunction with the PIEE system that prevented ShipCycle from timely submitting its FPRs. Cross-MJAR at 37-40. To the contrary, the investigation revealed at least some errors on ShipCycle's end, e.g., the second error described "would be a user error." *Id.* at 37-38 (citing AR 9834). Again seeking to reverse the burden of proof, Energy Solutions asserts that, the investigation "do[es] not demonstrate that the PIEE website did not malfunction short of a total outage." Reply at 19. We fail to see Energy Solutions's point. DISA found that there were "[n]o reported outages of [the] PIEE site yesterday. All applications and site where [*sic*] functioning 100% yesterday. Network error James described is localized and would not be related to PIEE." AR Tab 92 at 9834. As Energy Solutions concedes, the PIEE representative also summarized these circumstances stating that "there were NO system issues with PIEE . . . and many vendors were able to submit their proposals for this specific solicitation on time." AR

Tab 94 at 9838 (emphasis removed).  These findings by DISA certainly do not establish Energy Solutions's burden to show that its proposal was within the Government's control.

Energy Solutions cites the lack of information from DISA and the DLA about the documents depicted in the screenshot to imply the existence of a scandal.  Reply at 11-12.  Given that those documents could be deleted and replaced until the proposal is actually submitted, it is not surprising that there is no record of what was and was not uploaded.  The reality that there is no record of what ShipCycle uploaded only underscores that it did not actually submit its offer.

In sum, in the face of evidence to the contrary, Energy Solutions offers nothing but conjecture that there must have been some error somewhere in PIEE that somehow prevented ShipCycle from timely submitting its FPRs.  Conjecture is not evidence, and it does not constitute a reason to overturn the Navy's reasonable conclusion that there was no applicable exception to the late-is-late rule and that eliminating ShipCycle from consideration was required pursuant to the terms of the solicitation and the FAR.  Energy Solutions argument here is the same argument that was advanced and rejected by this Court in *Syncon, LLC v. United States*, 154 Fed. Cl. 442, 455 (2021).  Like *Syncon*, Energy Solutions's protest should be denied.

## C.    The Navy Was Not Required to Grant ShipCycle an Extension

Energy Solutions also argues the Navy's CO abused his discretion by not granting ShipCycle a last-minute extension of the submission deadline.  MJAR 14 (citing AR 9784).  This argument faces practical and legal problems.

By asking for an extension just minutes before the submission deadline, ShipCycle's representative left the Navy's CO no time to investigate and consider the merits of the request and no time to obtain the requisite internal approvals of such an extension if the request was meritorious.  ShipCycle's last-minute request effectively sought a post-hoc extension of the

deadline as we noted in our prior briefing. MJAR at 40-42. Additionally, the extension was sought after the other offerors had submitted their proposals. Granting a last-minute extension, rendering the submission deadline meaningless to the benefit of one offeror, would have prejudiced these other offerors. *Labatt Food Serv., Inc. v. United States*, 577 F.3d 1375, 1381 (Fed. Cir. 2009) ("There are inherent competitive advantages to submitting a proposal after all other parties . . ."). To avoid the "potential for abuse, submission deadlines are strictly enforced across the board." *Id.*

Critically, Energy Solutions offers no authority that required the Navy to grant it a last-minute extension of the proposal deadline when the other offerors had already timely submitted their proposals. Agencies CO's have substantial discretion to address "a broad range of issues confronting them' in the procurement process." *Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1333 (Fed. Cir. 2001). That, in turn, requires Energy Solutions to demonstrate that the Navy abused its discretion in honoring the terms of the solicitation and the FAR. Indeed, agencies may (and should) adhere to the deadlines they set and enforce the strict late-is-late rule. *Labatt Food Serv., Inc.*, 577 F.3d at 1381.

Attempting to meet its heavy burden, Energy Solutions asserts that the fact that it was the ███████████ alone is sufficient reason to grant an extension and nullify the deadline.[7] Reply at 6-8. There is of course no such exception to the late-is-late rule and no requirement that deadlines be extended for ████████████. The reason is self-evident. Doing so would enable the very gamesmanship that this Court has warned against, and which strict application of

_____

[7] As we noted previously in our Cross-MJAR, the Navy has not evaluated ShipCycle's late proposal. Cross-MJAR at 41, n.13. Therefore, the Navy does not know if ShipCycle actually offers ████████████ NorthStar. *Id.*; *see also* FAR 15.208(g) ("Late proposals and modifications that are not considered must be held unopened, unless opened for identification, until after award.")

the late-is-late rule is intended to prevent. *Orion Tech., Inc. v. United States*, 102 Fed. Cl. 218, 232 (2011), *aff'd*, 704 F.3d 1344 (Fed. Cir. 2013) ("Indeed, had the Army accepted plaintiff's late submissions, the Army would have given plaintiff an unfair competitive advantage by bestowing a benefit—additional time to submit a complete proposal—exclusively on plaintiff."); *Elec. On-Ramp, Inc. v. United States*, 104 Fed. Cl. 151, 162 (2012).

To bolster its assertion that an extension was appropriate, Energy Solutions points to this Court's decision in *Guardian Moving & Storage Co., Inc. v. United States*, 122 Fed. Cl. 117, 134 (2015), aff'd, 657 Fed. Appx. 1018 (Fed. Cir. 2016). There, however, the Court deferred to the agency CO's decision to grant an extension of the submission deadline days, not minutes, before the deadline at a time when none of the offerors had submitted their final proposals. *Id.* Just as that Court deferred to the CO's exercise of discretion, the Government requests this Court defer to the Navy CO's discretion (or inability to exercise that discretion at the last minute) to adhere to the submission deadline and not grant an extension to ShipCycle.

A more analogous case is *Competitive Innovations, LLC v. United States*, 177 Fed. Cl. 717, 727 (2025). There, the protester argued that by declining to extend the submission deadline by one day, the CO acted unreasonably because he did not "maximize the agency's ability to obtain the best value." *Competitive Innovations, LLC v. United States*, 177 Fed. Cl. 717, 727 (2025). The Court stated the offeror's "tardy submission was the foreseeable consequence of its own deleterious conduct." *Id.* Noting the "ample opportunities" the protestor had to avoid a late submission, the Court held that there was "no reason to interfere" with the CO's discretion, and that without a reason why the deadline was unreasonable, "Plaintiff's complaint amounts to mere

disagreement with the agency's judgment, which is not sufficient to establish the agency acted unreasonably." *Id*. (internal quotations omitted).[8]

Here, ShipCycle did not request an extension until 33 minutes from the submission deadline at a time when the other offerors had submitted their proposals. The Navy's CO worked with ShipCycle in those final minutes in an effort to facilitate its submission by the deadline. The CO subsequently investigated the situation to see if there were any reasons to effectively extend the submission deadline to allow consideration of ShipCycle's proposal. For example, the CO looked for malfunctions with PIEE on the Government's end and exceptions to the late-is-late rule. The CO found none. Thus, it was not an abuse of discretion to honor the submission deadline and adhere to the late-is-late rule.

### D.    Energy Solutions Is Not Entitled to a Permanent Injunction

For the reasons set forth in our Cross-MJAR, entry of the permanent injunctive relief sought by Energy Solutions is not warranted. ECF No. 42-43.

## III.    Conclusion

For the reasons set forth above, we respectfully request that this Court dismiss Energy Solutions's derivative claims for lack of standing or in the alternative deny its motion for judgment on the administrative record and grant the Government's cross-motion for judgment on the administrative record.

---

[8]  Energy Solutions also appears to argue that ShipCycle's request for an extension constitutes a pre-award protest. Reply at 3. Yet, based on the record, including ShipCycle's emails at the time, it is unclear what ShipCycle expressed disagreement with and what it was protesting when it asked for an extension. All ShipCycle said was that it was having trouble uploading its files and "need[ed] an extension." Am. Comp. ¶¶ 32, 35. This is insufficient. FAR 33.103(d)(2) requires agency-level protests to include a detailed statement of the legal and factual grounds for the protest, to include a description of resulting prejudice to the protester. Adopting such an argument would mean any extension request submitted by a protester at any time prior to the deadline set for receipt of proposals would be functionally a pre-award protest.

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

PATRICIA M. MCCARTHY
Director

STEVEN J. GILLINGHAM
Assistant Director

/s/ Thomas J. Adair
THOMAS J. ADAIR
Trial Attorney
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
P.O. Box 480
Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 353-7955
Email: thomas.adair@usdoj.gov

*Attorneys for the United States*

Of counsel:
Samantha J. Hogue
Office of Counsel
Naval Sea Systems Command

20