## IN THE UNITED STATES COURT OF FEDERAL CLAIMS
### BID PROTEST

HII SHIPCYCLE, LLC.,

          *Plaintiff,*

v.

THE UNITED STATES,

          *Defendant,*

and

NORTHSTAR MARITIME
DISMANTLEMENT SERVICES, LLC,

          *Defendant-Intervenor.*



No. 25-1336
Judge Philip S. Hadji

---

### DEFENDANT'S SUPPLEMENTAL BRIEF IN SUPPORT OF ITS CROSS-MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD AND OPPOSITION TO PLAINTIFF'S MOTION FOR JUDGMENT ON THE RECORD

BRETT A. SHUMATE
Assistant Attorney General

PATRICIA M. McCARTHY
Director

STEVEN J. GILLINGHAM
Assistant Director

THOMAS J. ADAIR
Trial Attorney
Civil Division, U.S. Department of Justice
P.O. Box 480
Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 353-7955
Email: thomas.adair@usdoj.gov

*Attorneys for the United States*

Of counsel:
Samantha J. Hogue
Office of Counsel
Naval Sea Systems Command

# Table of Contents

INTRODUCTION ................................................................................................................ 1

ARGUMENT ..................................................................................................................... 3

I.   Answering Questions One and Two: FAR 52.215-1(c) Allows the Exclusion of Proposals Submitted on Paper, and It Is Not Arbitrary and Capricious to Enforce the FAR ............... 3

    A.   The Plain Language of FAR 52.215-1(c) Allows an Agency to Require Proposals Be Submitted Exclusively in Electronic Format ................................................................ 3

    B.   By Excluding ShipCycle's Late Proposal, the Navy Enforced the Requirements of the Solicitation and the FAR's Late-Is-Late Rule ........................................................... 8

    C.   Enforcing the FAR and the Solicitation Terms Is Not Arbitrary or Capricious ............ 9

II.  Answering Question Three: ShipCycle's Email Stating That an Extension Is Necessary Was Clearly Not an Agency-Level Pre-Award Protest; ShipCycle is thus Barred from Now Challenging the Submission Method; and the Court Cannot Appropriately Order the Government to Amend the Solicitation Because ShipCycle was Not Prejudiced by the Absence of a Paper Media Requirement ......................................................................... 10

III. Answering Question Four: There Is No Authority That Required the Navy to Consider Cancelling the Solicitation or Document the Absence of a Decision ................................. 13

CONCLUSION ................................................................................................................ 15

## Table of Authorities

Page(s)

**Cases**

*AccelGov, LLC v. United States,*
   164 Fed. Cl. 345 (2023) ........................................................................................ 15

*Banknote Corp. of Am., Inc. v. United States,*
   365 F.3d 1345 (Fed. Cir. 2004) ............................................................................ 9

*Bannum, Inc. v. United States,*
   779 F.3d 1376 (Fed. Cir. 2015) ................................................................ 2, 10, 11

*BayFirst Sols., LLC v. United States,*
   102 Fed.Cl. 677 (2012) ......................................................................................... 5

*Blue & Gold Fleet, L.P. v. United States,*
   492 F.3d 1308 (Fed.Cir.2007) ...................................................................... 10, 11

*Bowles v. Seminole Rock & Sand Co.,*
   325 U.S. 410, 65 S.Ct. 1215, 89 L.Ed. 1700 (1945) ........................................... 3

*Domenico Garufi v. United States,*
   238 F.3d 1324 (Fed. Cir. 2001) ............................................................................ 6

*Gen. Elec. Co. v. United States,*
   92 Fed. Cl. 798 (2010) .......................................................................................... 5

*Glenn Def. Marine (ASIA), PTE Ltd. v. United States,*
   720 F.3d 901 (Fed. Cir. 2013) ............................................................................ 12

*Golden IT, LLC v. United States,*
   177 Fed. Cl. 118 (2025) ...................................................................................... 11

*IAP Worldwide Services, Inc. v. United States,*
   159 Fed. Cl. 265 (2022) ...................................................................................... 12

*Impresa Construzioni Geom. Domenico Garufi v. United States,*
   238 F.3d 1324, 1333 (Fed. Cir. 2001) ................................................................. 6

*Loyal Source Gov't Servs., LLC v. United States,*
   176 Fed. Cl. 170 (2025) ...................................................................................... 12

*Madison Services, Inc. v. United States,*
   92 Fed. Cl. 120 (2010) ................................................................................... 13, 14

*Novosteel SA v. United States,*
   284 F.3d 1261 (Fed. Cir. 2002) .......................................................................... 12

*NVE, Inc. v. United States,*
   121 Fed. Cl. 169 (2015) ........................................................................................ 9

*Paradyme Mgmt., Inc. v. United States,*
   167 Fed. Cl. 180 (2023) ...................................................................................... 15

*Per Aarsleff A/S v. United States,*
   829 F.3d 1303 (Fed. Cir. 2016) ............................................................................ 5

*Sarro & Assocs., Inc. v. United States*,
  152 Fed. Cl. 44 (2021) ............................................................................ 12

*Satellite Servs., Inc.*,
  B-288848.3, 2003 CPD ¶ 88, 2003 WL 21048768 (Comp. Gen. Apr. 28, 2003) .................. 13

*Seventh Dimension, LLC v. United States*,
  160 Fed. Cl. 1 .................................................................................. 13

*Seventh Dimension, LLC v. United States*,
  161 Fed. Cl. 110 (2022) ......................................................................... 14

*Sys. Stud. & Simulation, Inc. v. United States*,
  22 F.4th 994 (Fed. Cir. 2021) ................................................................... 12

*Tesoro Hawaii Corp. v. United States*,
  405 F.3d 1339 (Fed. Cir. 2005) ................................................................... 3

*United States v. Castrillon–Gonzalez*,
  77 F.3d 403 (11th Cir.1996) ...................................................................... 6

**Statutes**

10 U.S.C. § 3303(c) ................................................................................ 13

10 USC § 3301(b) ................................................................................... 13

**Regulations**

FAR 4.502 ........................................................................................... 5

FAR 4.502(a) ...................................................................................... 5, 7

FAR 9.506 .......................................................................................... 15

FAR 15.2 ............................................................................................ 7

FAR 15.203(c) ....................................................................................... 5

FAR 15.206(e) ...................................................................................... 14

FAR 15.208(a) .................................................................................... 4, 5

FAR 15.208(b) ....................................................................................... 9

FAR 15.305(b) ...................................................................................... 13

FAR 15.306(e)(1) ................................................................................... 14

FAR 33.103(d)(2) ............................................................................ 2, 10, 11

FAR 52.215-1 ............................................................................... 7, 8, 9, 10

FAR 52.215-1(c) .............................................................................. 2, 1, 3

FAR 52.215(c)(1) ............................................................................. passim

FAR 52.215(c)(3) .................................................................................... 9

DFARS, Tech. Amend., 89 FR 82182 .................................................................. 8

iv

DFARS PGI 205.102-70(b) .................................................................................... 8

DFARS 252.215.7012 ......................................................................................... 1

**Other Authorities**

Federal Acquisition Regulation; Part 15 Rewrite; Contracting by Negotiation and Competitive
    Range Determination, 62 FR 51224-01, 1997 WL 596102..................................................... 6

Federal Acquisition Regulation System, 48392 Fed Reg. Vol. 61, No. 178
    (proposed Sept. 12, 1996) ..................................................................................... 4

*In re: The Ulysses Group, LLC,* B- 420566 (Comp. Gen. June 7, 2022) .................................. 11

*Unless*, Merriam-Webster, (https://www.merriam-webster.com/dictionary/unless) .................... 4

*Unless*, *Cambridge Dictionary*, (https://dictionary.cambridge.org/us/dictionary/english/unless) . 4

## INTRODUCTION

Pursuant to the Court's order of November 13, 2025 (ECF No. 64), defendant, the United States, submits this brief addressing the Court's request for supplemental briefing addressing Federal Acquisition Regulation (FAR) 52.215-1, plaintiff's last-minute statement that an extension of the submission deadline was needed, and whether the Navy was required to consider cancelling the subject procurement following receipt of all final proposals.

In this modern era, exclusive submission of procurement offers by electronic means is the norm, not the exception. Such exclusive use of electronic means serves several purposes, including addressing practical concerns given the volume and size of proposals, enabling efficient searches, review, and evaluation of electronic documents, providing greater security of confidential materials, and facilitating appreciable clarity regarding whether proposals timely reached the designated office for receipt of proposals. Given these concerns and more, the Department of Defense (a/k/a the Department of War) (DOD/DOW) has recommended for years that procurement offers be submitted through the Procurement Integrated Enterprise Environment (PIEE) system, which was used for the subject procurement. As discussed below, this recommendation has been codified as a mandatory requirement effective October 1, 2026.

Importantly, the exclusive use of an electronic means for the submission of proposals complies with FAR 52.215-1(c). Enacted in 1997, this provision merely provides a default rule that proposals be submitted on paper *unless* the procuring agency specifies otherwise. That is exactly what happened here; the Navy specified another means of submission for this procurement. In the decades since that regulation was enacted, other regulations have been enacted that clearly permit agencies to require that proposals be submitted exclusively by an electronic means. Accordingly, requiring submission via PIEE as set forth in the solicitation was

not an abuse of discretion by the Navy. Further, it is a requirement to which Plaintiff, HII ShipCycle, LLC (ShipCycle), never objected, and thus any such objection has been waived.

Additionally, ShipCycle's email statement that an extension was needed, which was sent just 33 minutes before the deadline, cannot reasonably be considered a protest because it does not comply with the requirements for an agency-level protest. FAR 33.103(d)(2); *Bannum, Inc. v. United States*, 779 F.3d 1376, 1380 (Fed. Cir. 2015). The threadbare email contains no details of the legal and factual grounds for a protest, did not object to the deadline, and did not contest the solicitation's requirement that proposals be submitted through PIEE. FAR 33.103(d)(2).

Further, the Navy was not obligated to consider cancelling the solicitation after the FPR deadline for the purpose of increasing competition or best value. The FAR's requirements establishing when cancellation must be considered have not been met here. The Navy received two timely proposals for the work, which is not unusual for unique defense procurements involving specialized skills, expertise, and experience. Cancelling the solicitation would have delayed this procurement and imposed considerable additional costs on the Government. Moreover, a cancellation would have been for the sole benefit of ShipCycle. Such favoritism, especially in such a transparent manner, is expressly barred by the FAR.

Finally, and critically, the issues addressed in this brief were never timely raised, argued, and preserved by ShipCycle. ShipCycle never timely objected to the solicitation's requirement that the proposals be submitted electronically and it never timely argued that the Navy was required to consider cancelling the procurement and that not doing so was an abuse of discretion. Accordingly, these arguments have been waived and may not serve as grounds for granting ShipCycle's Motion for Judgment on the Administrative Record and sustaining its protest.

For the reasons set forth below, in the Government and Intervenor's prior briefing, and discussed at the October 30, 2025 oral argument in this matter, Plaintiff ShipCycle's proposal was submitted well after the submission deadline and no exception to the late-is-late rule applies. The FAR and extensive case law provide that under the circumstances of this case, ShipCycle's protest must be denied and the Cross-Motions for Judgment on the Administrative Record (XMJAR) of the Government and Intervenor granted.

## ARGUMENT

I.    **Answering Questions One and Two: FAR 52.215-1(c) Allows the Exclusion of Proposals Submitted on Paper, and It Is Not Arbitrary and Capricious to Enforce the FAR**

A.    **The Plain Language of FAR 52.215-1(c) Allows an Agency to Require Proposals Be Submitted Exclusively in Electronic Format**

When construing a regulation, courts do so by ascertaining its plain meaning. *Tesoro Hawaii Corp. v. United States*, 405 F.3d 1339, 1346–47 (Fed. Cir. 2005). "When there is no ambiguity in the meaning of the regulation, 'it is the duty of the courts to enforce it according to its obvious terms and not to insert words and phrases so as to incorporate therein a new and distinct provision.'" *Id.* (quoting *Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410, 414–15, 65 S.Ct. 1215, 89 L.Ed. 1700 (1945)).

FAR 52.215-1(c)(1) provides in relevant part:

> *Unless other methods* (*e.g., electronic commerce* or facsimile) *are permitted in the solicitation*, proposals and modifications to proposals shall be submitted in paper media in sealed envelopes or packages . . . .

(emphasis added).

As the plain language of this provision enacted in 1997[1] provides, submission of proposals on paper is merely the default means of submission, *unless* the solicitation provides otherwise. The plain meaning of the word "unless" signals something that will happen or be true if something else does not happen. *Unless, Merriam-Webster*, (https://www.merriam-webster.com/dictionary/unless) (last visited, November 20, 2025) ("except on the condition that : under any other circumstance than"); *Unless, Cambridge Dictionary*, https://dictionary.cambridge.org/us/dictionary/english/unless) (last visited, November 20, 2025) ("used to say what will or will not happen if something else does not happen or is not true; except if:"). Therefore, FAR 52.215-1(c)(1) commences with a prepositional phrase that establishes a preliminary condition—"[u]nless other methods (e.g., electronic commerce or facsimile") are permitted in the solicitation,"—which if not met, renders the remainder of the sentence true ("proposals and modifications to proposals shall be submitted in paper media. . . ."). In other words, the provision instructs offerors that if no other methods are specified, then the method of submission is paper media. In the present case, the preliminary condition was met because the Navy specified another method for submission, rendering the remainder of the sentence false such that paper proposals were not a required method for submission.

Importantly, an interpretation of FAR 52.215(c)(1) requiring that paper submissions be permitted would conflict with FAR 15.208(a), which provides that "[o]fferors may use any transmission method authorized by the solicitation (*i.e.,* regular mail, electronic commerce, or facsimile)." In other words, FAR 15.208(a) limits the means by which submissions can be made to those set forth in the solicitation. The solicitation in this procurement restricted submissions

---

[1] This regulation was proposed on Sept. 12, 1996. *See* 48392 Fed Reg. Vol. 61, No. 178.

to those made through PIEE.  AR 177. [2]  Thus, pursuant to FAR 15.208(a), PIEE was the exclusive means by which submissions could be made.

Moreover, other FAR provisions direct agencies to use electronic means when possible. For example, FAR 15.203(c) states "[e]lectronic commerce may be used to issue RFPs and to receive proposals, modifications, and revisions.  In this case, the RFP shall specify the electronic commerce method(s) that offerors may use (see subpart  4.5)." Subpart 4.5 provides in part:

> The federal Government **shall use electronic commerce whenever practicable or cost-effective**.  The use of terms commonly associated with paper transactions (*e.g.,* "copy," "document," "page," "printed," "sealed envelope," and "stamped") shall not be interpreted to restrict the use of electronic commerce. Contracting officers may supplement electronic transactions by using other media to meet the requirements of any contract action governed by the FAR (*e.g.,* transmit hard copy of drawings).

FAR 4.502(a) (emphasis added).  FAR subpart 4.5 establishes a clear preference for electronic media over other forms of media, citing hard copy submissions as a permissible, but not required, supplement.

In this context, FAR 52.215-1(c)(1) must be interpreted to preserve the Government's discretion to substitute electronic proposals for paper media.  Otherwise, FAR 4.502 would be impermissibly rendered meaningless. *Gen. Elec. Co. v. United States*, 92 Fed. Cl. 798, 812

---

[2]  In addition to the solicitation provisions clearly stating submission through PIEE was required (*e.g.*, AR 177), a bidder's question noted this requirement and asked if proposals could be emailed.  AR 1751.  The Navy reaffirmed that submissions must be made through PIEE and "strongly encouraged [offerors] to submit to PIEE early to allow time to confirm receipt of the proposal materials with the PCO or CS via separate correspondence."  *Id.*  In accordance with Section L.2 of the Solicitation, "[q]uestions and responses [were] distributed electronically . . . to all potential Offerors as an amendment to the solicitation . . ." via sam.gov and PIEE, and were thereby incorporated into the solicitation. *Per Aarsleff A/S v. United States*, 829 F.3d 1303, 1311 (Fed. Cir. 2016) (citing *BayFirst Sols., LLC v. United States*, 102 Fed.Cl. 677 (2012) ("answers [to bidder's questions], when circulated to all [bidders] as an attachment to an amendment signed by the contracting officer, constitute an amendment of the solicitation.").

(2010) (citing *United States v. Castrillon–Gonzalez*, 77 F.3d 403, 406 (11th Cir.1996) (noting the "well-established axiom of statutory construction that a statute is to be interpreted so that no words shall be discarded as being meaningless, redundant, or mere surplusage.") (internal quotation marks omitted)).

Interpreting FAR 52.215(c)(1) to require that paper submissions be allowed would not only conflict with the above FAR provisions, but it would be inconsistent with intent of its authors.  FAR 52.215(c)(1) was enacted nearly 30 years ago when technology was less advanced and the use of paper was more common, but nevertheless the regulation was intended to empower agencies to eliminate unnecessary burdens and facilitate efficient procurement decisions through innovative methods and technologies as agency officials see fit.

> The goals of this rewrite are to infuse innovative techniques into the source selection process, simplify the process, and facilitate the acquisition of best value. The rewrite emphasizes the need for contracting officers to use effective and efficient acquisition methods, and eliminates regulations that impose unnecessary burdens on industry and on Government contracting officers.

Federal Acquisition Regulation; Part 15 Rewrite; Contracting by Negotiation and Competitive Range Determination, 62 FR 51224-01, 1997 WL 596102.  Summarizing the changes and the goals thereof, among other things, the authors explained the rule "[r]establish[ed] the 'late is late' rule," "[r]educ[ed] the bid and proposal costs," and "reflect[ed] the need for greater flexibility and teamwork."  The goals of providing agencies with flexibility and unburdening them are reflected in the plain language of the rule allowing agencies to depart from the default rule that proposals be submitted on paper.  Such deference to agency decisions regarding proposal submissions comports with the fundamental principal that agencies are entitled to considerable discretion regarding the way they conduct their procurements.  *Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1333 (Fed. Cir. 2001) (Agencies have

substantial discretion to address "a broad range of issues confronting them' in the procurement process.").

Allowing agencies to require proposal submission by a specified electronic means—which FAR 52.215-1(c)(1) and other FAR provisions do—also recognizes the practical obstacles presented by paper submission. There are many reasons it is now widespread industry practice to require, not just permit, electronic proposal submissions. Submission and review of paper proposals would be much more unwieldy given that they are often hundreds or thousands of pages long. Review of paper proposals would also be much more challenging, time consuming, and resource intensive. Unlike paper copies, electronic documents can be searched for key words and reviewers can quickly toggle to important sections of a proposal in electronic format. In other words, proposals in electronic format enable more expeditious review of proposals and contract awards. Additionally, electronic submission facilitates better recording of the time and date proposals were received and enables greater security of confidential material.

Thus, while paper media may be the default submission method when a solicitation is silent on the permissibility of another submission method under FAR 52.215(c)(1), that scenario is not the case here. The CVN-65 Dismantlement and Disposal Solicitation specified an electronic submission method via PIEE, and opted not to "supplement" it with paper media, in accordance with FAR 4.502(a), FAR 15.2, and FAR 52.215-1.

In addition to the FAR's preference for electronic media and deference to agencies, DOD/DOW has further established a preference for PIEE over other forms of proposal submission. As set forth in the attached memorandums from 2020 and 2021 from the Office of the Under Secretary of Defense, DOD/DOW agencies are "encourage[d] to use the Solicitation Module in PIEE as an alternative [to other means] for publication of solicitations and receipt of

offers." Ex. A at 1. As the first memorandum states, the PIEE module was designed "to provide a capability for secure, timestamped submission of contractor proposals . . . to capture the documentation needed to memorialize the date and time of offer submissions, as well as retain those files and attendant time and date stamps." *Id.* "PIEE enables secure transmission of messages and files . . . [which] can avoid the need for sending sensitive information by less than secure means," such as on paper by mail or courier service. *Id.* at 4.

The recommendation from the Office of the Under Secretary of Defense that defense agencies exclusively use PIEE has been incorporated into the DFARS and will be mandatory in less than a year. As published in the Federal Register on October 10, 2024, "[e]ffective October 1, 2026, unless an exception applies, contracting officers shall use the [PIEE] Solicitation Module for publishing unclassified solicitations and for receiving offers and quotes." *See* Defense Federal Acquisition Regulation Supplement; Technical Amendments, 89 FR 82182 (requiring compliance with DFARS PGI 205.102-70(b)).

Considering the plain meaning of FAR 52.215-1(c)(1), the other FAR and DFARS provisions, and DOD/DOW's preference for electronic forms of submission over paper media, it is permissible for the Government to issue a solicitation without requiring paper media as a form of submission.

### B.    By Excluding ShipCycle's Late Proposal, the Navy Enforced the Requirements of the Solicitation and the FAR's Late-Is-Late Rule

ShipCycle was "eliminated from the competition for [the subject] solicitation . . . [because] its proposal was late." AR 9920. As the Navy explained in its notice to ShipCycle,

> [T]he Government did not receive ShipCycle's FPR for its Volume II Technical Proposal, Volume III Price Proposal, or Volume IV Paster Performance Proposal by the time specified. Accordingly, the Navy found ShipCycle's FPR submission was unresponsive

> [because] ShipCycle did not submit and the Navy did not receive a
> meaningful proposal by the deadline."

*Id.* Thus, as set forth in the record, when the Navy eliminated ShipCycle from consideration, it was enforcing the terms of the solicitation, including the provision stating that proposals "not received at the time specified will be considered late and not considered for award." AR 177; *See NVE, Inc. v. United States*, 121 Fed. Cl. 169, 180 (2015) ("An agency is required to evaluate proposals only in accordance with the terms of the solicitation.). This action also enforced the "late-is-late" rule found at FAR 52.215(c)(3) as well as at FAR 15.208(b). Thus, any argument about the method of submission and FAR 52.215(c)(1) is a red herring. ShipCycle's proposal was late, and it was eliminated from consideration for that reason.

### C.    Enforcing the FAR and the Solicitation Terms Is Not Arbitrary or Capricious

The Navy eliminated ShipCycle from consideration because ShipCycle failed to comply with the terms of the solicitation. Specifically, ShipCycle failed to submit a complete proposal through the PIEE website by the deadline.[3] As set forth above, the solicitation's requirement that proposals be made through PIEE was in accordance with the FAR, which permits and recommends (and will soon require) that proposals be submitted exclusively by electronic means. Likewise, enforcing the solicitation's submission deadline was appropriate and in accordance with the FAR and case law from this Court.

To be arbitrary and capricious an agency decision must have no rational basis. *Banknote Corp. of Am., Inc. v. United States*, 365 F.3d 1345, 1351 (Fed. Cir. 2004). Agencies are required to enforce the terms and requirements set forth in their solicitations. *NVE, Inc.*, 121 Fed. Cl. at

---

[3] The solicitation provides that "[t]he PIEE website is the only acceptable method of submission" and proposals "not received at the time specified will be considered late and not considered for award." *See* AR 177.

9

180; *Blue & Gold Fleet, L.P. v. United States,* 492 F.3d 1308, 1315 (Fed.Cir.2007) (requiring that an objection to the terms of a solicitation be made prior to the close of bidding). An agency's compliance with the terms of the solicitation and the FAR is not just rational, but mandatory. Accordingly, it cannot be arbitrary and capricious for an agency to enforce the terms it set forth in its solicitation. The Navy's exclusion of ShipCycle from consideration must be upheld.

II.    **Answering Question Three: ShipCycle's Email Stating That an Extension Is Necessary Was Clearly Not an Agency-Level Pre-Award Protest; ShipCycle is thus Barred from Now Challenging the Submission Method; and the Court Cannot Appropriately Order the Government to Amend the Solicitation Because ShipCycle was Not Prejudiced by the Absence of a Paper Media Requirement.**

The Court cannot properly consider Plaintiff's email to the contracting officer requesting an extension prior to the FPR deadline as an agency-level protest, because the email to the contracting officer did not contain any of the required elements of an agency-level protest. FAR 33.103(d)(2); *Blue & Gold Fleet, L.P. v. United States*, 492 F.3d 1308, 1313 (Fed. Cir. 2007).[4] Further, because solicitation provision FAR 52.215-1 "Instructions to Offerors" does not obligate the Government to permit paper proposals, and because there is no evidence (or argument from the Plaintiff) that permitting paper media would have had any impact on ShipCycle's elimination, the Court cannot properly order the Government to amend the Solicitation to allow

---

[4] Discussing the *Blue & Gold* waiver rule, the Federal Circuit has explained that the rule "implements Congress's directive that courts shall give due regard to ... the need for expeditious resolution of protest claims. [The] rule implements this statutory mandate by reducing the need for the inefficient and costly" process of agency rebidding after offerors and the agency have expended considerable time and effort submitting or evaluating proposals in response to a defective solicitation. . . . Requiring that the prescribed formal routes for protest be followed (to avoid waiver) reduces uncertainty about whether the issue is joined and must be resolved, and thereby helps prevent both the wasted and duplicative expenses (of all bidders and the government) and the delayed implementation of the contract . . ." *Bannum, Inc. v. United States*, 779 F.3d 1376, 1380 (Fed. Cir. 2015) (internal quotation marks and citation omitted).

paper media. *Golden IT, LLC v. United States,* 177 Fed. Cl. 118, 141 (2025) ("Plaintiff is not entitled to any relief unless [it] further demonstrates that the [specified] error is prejudicial.").

Thirty-three (33) minutes before the submission deadline, a ShipCycle employee emailed the Navy's Contracting Officer (CO) stating, "I am trying to save each file individually now but it is really slow.  I don't see how they will all be saved by 3pm and need an extension." AR 9994.  This threadbare email does not constitute an agency-level protest because the message did not contain the required elements of an agency-level protest.

FAR 33.103(d)(2) requires agency-level protests to include a "[d]etailed statement of the legal and factual grounds for the protest, to include a description of resulting prejudice to the protester."  ShipCycle's email, however, did not identify any problems with the solicitation terms, let alone object to the method of submission.  It is not clear what, if anything, ShipCycle was protesting.  The email does not identify a solicitation provision, nor a problem with a solicitation provision.  Even if this email were generously interpreted as an expression of dissatisfaction with PIEE, "mere notice of dissatisfaction or objection is insufficient to preserve [protester's] defective-solicitation challenge." *Bannum, Inc. v. United States*, 779 F.3d 1376, 1380 (Fed. Cir. 2015); *see also, Matter of: The Ulysses Group, LLC,* B- 420566 (Comp. Gen. June 7, 2022) ("A letter or email that merely expresses a suggestion, hope, or expectation, does not constitute an agency-level protest.").

At no time did ShipCycle attempt to submit a paper proposal, indicate a preference for paper media, or challenge the method of submission as a solicitation defect.  ShipCycle is thus barred from doing so now. *Bannum, Inc.*, 779 F.3d at 1380 (an objection to the terms of a solicitation be made prior to the close of bidding); *Blue & Gold Fleet, L.P.*, 492 F.3d at 1313 (Fed. Cir. 2007).  Likewise, ShipCycle cannot demonstrate prejudice resulting from the

prohibition on paper submission such that the Court may grant relief.  *See Loyal Source Gov't Servs., LLC v. United States*, 176 Fed. Cl. 170 (2025) ("despite identifying an error, the court will not change the course of this procurement at this stage because [Plaintiff] cannot show prejudice."); *Sys. Stud. & Simulation, Inc. v. United States*, 22 F.4th 994 (Fed. Cir. 2021) ("'[t]o prevail in a bid protest case, the protestor must show that it was prejudiced by the government's [errors].'") (citing *Glenn Def. Marine (ASIA), PTE Ltd. v. United States*, 720 F.3d 901, 912 (Fed. Cir. 2013)).

Moreover, even after the submission deadline passed, including in this litigation, ShipCycle has never articulated an objection to the requirement that proposals be submitted via PIEE and not on paper.  Nowhere in its agency level protest submitted on December 27, 2024 (AR 10000-10021), its GAO protest submitted on January 6, 2025 (AR 10022-10050), its June 9, 2025 agency level protest (AR 9937-9952), its initial Complaint submitted before this Court, its amended complaints, or its briefings, does ShipCycle allege that the Navy's requirement that proposals be submitted via PIEE was improper.  Even in the questions presented section of its Motion for Judgment on the Administrative Record (MJAR), ShipCycle does not present the Court with the question of whether it was improper for the Navy to require proposal submissions be made through PIEE.  MJAR, ECF No. 42, at 4.  Thus, even if the requirement that proposals be exclusively submitted via PIEE was improper—it was not—that cannot serve as grounds for sustaining ShipCycle's protest because that argument has been waived.  *IAP Worldwide Services, Inc. v. United States*, 159 Fed. Cl. 265, 306 (2022) (arguments not raised by a party in its MJAR are waived); *Sarro & Assocs., Inc. v. United States*, 152 Fed. Cl. 44, 58 (2021) ("A party's failure to raise an argument in an opening or responsive brief constitutes waiver.") (citing *Novosteel SA v. United States*, 284 F.3d 1261, 1273–74 (Fed. Cir. 2002)).

Thus, neither ShipCycle may argue nor the Court conclude that the solicitation should be amended (and this procurement undone and cancelled) to allow the submission of proposals on paper even if FAR 52.215-1(c)(1) required they be allowed—which it does not.

### III.    Answering Question Four: There Is No Authority That Required the Navy to Consider Cancelling the Solicitation or Document the Absence of a Decision

Consistent with the principle that effective Government contracting demands broad discretion, procurement officials are granted a great deal of discretion when deciding whether to cancel solicitations. *Madison Services, Inc. v. United States*, 92 Fed. Cl. 120, 126 (2010) ("[T]he regulatory standards for the cancellation of a negotiated procurement are so extraordinarily permissive that they impose no constraints upon a contracting officer's discretion beyond what reasoned judgment requires."); *see also Satellite Servs., Inc.*, B-288848.3, 2003 CPD ¶ 88, 2003 WL 21048768, at *6 (Comp. Gen. Apr. 28, 2003) ("In a negotiated procurement, an agency has broad authority to decide whether to cancel a solicitation.") (citations omitted).

The FAR provides two standards that govern a decision to cancel or not cancel a solicitation in a negotiated procurement. *Madison Services, Inc.*, 92 Fed. Cl. at 126. The first standard simply provides that the source selection authority may or may not reject all proposals if doing so is in the best interest of the Government. *Id.* (citing FAR 15.305(b)); *see also Seventh Dimension, LLC v. United States*, 160 Fed. Cl. 1, 17-18 *on reconsideration in part,* 161 Fed. Cl. 110 (2022) (finding that for Defense acquisitions, the rejection of all proposals as permitted by 10 USC § 3301(b) is an exception to the default rule at 10 U.S.C. § 3303(c), that a solicited contract *shall* be awarded.) (emphasis added). Under this standard, any rational basis for the decision is sufficient to uphold that decision. *Madison Services, Inc.*, 92 Fed. Cl. at 126. Thus, the operational and schedule impacts of delaying this procurement—including the diverted resources, the valuable dock space occupied by the CVN-65, and additional monthly costs (paid

13

to ShipCycle's parent company for occupying that dock space) that would be imposed on the Navy[5]—are more than sufficient to sustain the decision not cancel the procurement, particularly given that the Navy received two other proposals. *See id.*

The second standard is premised on FAR 15.206(e), which directs a contracting officer to cancel a solicitation if, in his or her discretionary opinion, the government changes its requirements so substantially that it exceeded what prospective offerors reasonably could have anticipated and made it likely that additional sources would have submitted offers had the substance of the amendment been known to them. *Id.* (citing FAR 15.206(e)); *Madison Services, Inc.*, 92 Fed. Cl. at 126. In the present case, however, there were no changes to the solicitation terms after receipt of FPRs, let alone a change so substantial as to require cancellation. "Only a proposed solicitation amendment constituting a cardinal change . . . triggers cancellation considerations under FAR 15.206(e)." *Seventh Dimension, LLC v. United States*, 161 Fed. Cl. 110, 117 (2022). The Navy did not make any changes to its requirements, and it was therefore under no obligation to consider cancellation.

Moreover, cancelling the solicitation after the final proposals were received and then redoing the procurement would have favored ShipCycle and unfairly prejudiced the other offerors. Such favoritism is expressly prohibited by the FAR. *E.g.,* FAR 15.306(e)(1).

Further, any argument that the Navy was required to consider cancelling the solicitation and then actually cancel it to maximize competition has been waived for the reasons set forth above. This argument was not made during ShipCycle's agency-level protest and is not found in

---

[5] When considering ShipCycle's request that the Navy consider ShipCycle's late proposal, the Navy cited its scheduling requirements as a factor in why it needed to move forward with the procurement. AR 9921; AR 9997.

its MJAR. In fact, no form of the word "cancel" is found anywhere in ShipCycle's MJAR. Thus, this argument has been waived, and the Court may not grant relief on such grounds.

Because the Navy was not required to consider cancelling or amending the solicitation after the receipt of FPRs, there was no reason or requirement to document a decision the Navy never made. To this end, this Court has found that absent an express authority requiring documentation, contracting officers are not required to document reasons for actions they do not take. *See, e.g., AccelGov, LLC v. United States*, 164 Fed. Cl. 345, 364 (2023) ("It would be inappropriate for the Court to penalize the CO for, in essence, failing to prove a negative in his award decision, especially where he was not under any obligation to do so."); *Paradyme Mgmt., Inc. v. United States*, 167 Fed. Cl. 180, 190-91 (2023) (holding that where FAR 9.506 requires a "written analysis" only if the contracting officer decides that an acquisition involves a significant potential organizational conflict of interest, the contracting officer is not required to document in writing a potential conflicts deemed not significant). Accordingly, the Navy was not required to document the absence of a decision not to cancel the solicitation.

## CONCLUSION

For the reasons set forth above, the Navy acted reasonably, rationally, and in compliance with the FAR and case law from this Court when the Navy authored its solicitation and the requirements therein, when it enforced the requirements of the solicitation, and when it chose not to consider cancelling the solicitation after final proposals were received. As set forth in the Government and Intervenor's prior briefing and as discussed at oral argument, there is no exception to the late-is-late rule or other authority requiring that ShipCycle's late proposal be considered. Accordingly, the Government respectfully requests this Court grant its Cross-Motion for Judgment on the Administrative Record and deny ShipCycle's protest.

15

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

PATRICIA M. McCARTHY
Director

STEVEN J. GILLINGHAM
Assistant Director

Of counsel:
Samantha J. Hogue
Office of Counsel
Naval Sea Systems Command

/s/ Thomas J. Adair
THOMAS J. ADAIR
Trial Attorney
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
P.O. Box 480
Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 353-7955
Email: thomas.adair@usdoj.gov

*Attorneys for the United States*

16